# Third District Court of Appeal

## State of Florida

Opinion filed March 15, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1128
Lower Tribunal No. 16-8292
_____

## Allied Universal Corporation,
Appellant,

vs.

## Jeffrey B. Given,
Appellee.

An appeal from a non-final order from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Daniel K. Bandklayder, P.A. and Daniel K. Bandklayder and Amy M. Bowers; Bowman & Brooke LLP and Douglas H. Stein, for appellant.

Ford & Harrison LLP and Elizabeth M. Rodriguez; Ford & Harrison LLP and Edward B. Carlstedt (Tampa), for appellee.

Before SUAREZ, C.J., and LAGOA and SCALES, JJ.

SUAREZ, C.J.

Allied Universal Corporation [Allied] appeals a non-final order denying its motion for a preliminary injunction by which it sought to enforce the terms of a non-compete agreement it had with former employee Jeffrey B. Given [Given]. A

review of the record shows that Given failed to rebut the presumption of irreparable injury raised by Allied. We accordingly reverse.

Allied is a Florida corporation engaged in the manufacture and distribution of water treatment chemicals, and sells its products throughout the southeastern U.S. Allied is headquartered in Miami-Dade County and has offices throughout Florida, and the southeastern U.S. Given is a resident of Georgia and was hired by Allied in 2010. He worked as regional sales manager for Allied in the Georgia facility, with responsibility for all sales territory north of Florida. During Given's employment with Allied, he received training regarding Allied's business practices, confidential and proprietary manufacturing processes, packaging and handling techniques, as well as proprietary business information such as raw material providers, production costs, customer lists, prospective customers, marketing and pricing.

In 2015, as a condition of continued employment, Given signed a non-disclosure and non-compete agreement that provided he not directly compete with Allied for 18 months after termination of employment and within a 150-mile radius of any Allied operational facility. In March 2016, Given resigned from Allied and took a job with Univar, in Georgia, as a strategic account manager. Univar is a company that directly competes with Allied, and is engaged in the manufacture, sale, packaging and distribution of many of the same chemicals Allied produces and distributes. In his position at Univar, Given targeted a larger market than

2

Allied, i.e., customers that buy in high volumes for barges and railcars, rather than by the truckload. Univar sells in the same geographic area as Allied, and within 150 miles of Allied facilities, but also purchases products from Allied as a customer. Allied sought temporary injunctive relief based on Given's violation of the non-compete agreement. Following an evidentiary hearing on Allied's motion, the trial court denied the motion, finding only that Allied failed to show irreparable harm or absence of an adequate remedy at law.

The trial court is afforded broad discretion when granting, modifying or denying an injunction. The trial court's decision can only be overturned on appeal upon a finding of a clear abuse of discretion. Wise v. Schmidek, 649 So. 2d 336, 337 (Fla. 3d DCA 1995). We find there was such an abuse as the record shows that Allied presented unrebutted evidence of a statutorily listed legitimate business interest to be protected and also presented unrebutted evidence of irreparable harm.

"A temporary injunction is an extraordinary and drastic remedy which should be sparingly granted." Cordis Corp. v. Prooslin, 482 So. 2d 486, 489 (Fla. 3d DCA 1986). To grant a temporary injunction, the moving party must plead and establish: (1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury to the petitioner outweighs any possible harm to the respondent[;] and (4) that the granting of a temporary injunction will not disserve the public

3

interest.  <u>Reliance Wholesale, Inc. v. Godfrey</u>, 51 So. 3d 561, 564 (Fla. 3d DCA 2010).

The issue in this appeal is controlled by Section 542.335 Florida Statutes (2016) (Valid restraints of trade or commerce).[1]  With that in mind, a court "shall

---

[1] Section 542.335 Florida Statutes (2016) provides:
(1) Notwithstanding s. 542.18 and subsection (2), enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited. In any action concerning enforcement of a restrictive covenant:

. . .

(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. The term "legitimate business interest" includes, but is not limited to:
1. Trade secrets, as defined in s. 688.002(4).
2. Valuable confidential business or professional information that otherwise does not qualify as trade secrets.
3. Substantial relationships with specific prospective or existing customers, patients, or clients.
4. Customer, patient, or client goodwill associated with:
a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";
b. A specific geographic location; or
c. A specific marketing or trade area.
5. Extraordinary or specialized training.
Any restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable.

Section 542.335 (1)(g)(4) provides:
(g) In determining the enforceability of a restrictive covenant, a court: . . .
4. Shall consider the effect of enforcement upon the public health, safety, and welfare.
(h) A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.

4

construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." §542.335(1)(g)(4), Fla. Stat. (2016). Section 542.335(1)(b), Florida Statutes (2016) provides a non-exhaustive list of statutorily protected legitimate business interests. This list includes "[s]ubstantial relationships with specific prospective or existing customers" and goodwill associated with an "ongoing business or professional practice" or "specific geographic location."

At the evidentiary hearing on the motion for temporary injunction, Allied presented unrebutted evidence of the existence of statutorily legitimate business interests to be protected and evidence that Given had substantial relationships with specific prospective or existing Allied customers. Allied's president, Mr. Palmer, testified that his company had trained Given, over the course of Given's six-year employment, in its manufacturing and production techniques, marketing strategies, and confidential pricing strategies.[2] In addition, Given had knowledge of existing and prospective customers, and had been sent to several trade meetings to cultivate

Section 542.335 (1) (j) provides:
(j) A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.

[2] Neither party has disputed that Given voluntarily signed a valid non-compete agreement or that Given became employed by Allied's competitor Univar within a month of resigning from Allied.

5

these contacts. "As with many sales positions, regardless of the industry, forming relationships with prospective and existing customers is invaluable and often vital for success." Reliance Wholesale, 51 So. 3d at 565. Allied, therefore, presented evidence of the existence of legitimate business interests to be protected as defined and set forth in Florida Statutes section 542.335(1)(b)2, and evidence that Given had substantial relationships with specific prospective or existing Allied customers. See §542.335(1)(b)3, Fla. Stat. (2016). As such, Allied's evidence was sufficient to create a rebuttable presumption of irreparable injury for purposes of obtaining a temporary injunction under section 542.335(j).

Once Allied presented evidence of irreparable injury, the burden shifted to Given, the party opposing enforcement, to establish the absence of such injury. §542.335(1)(j), Fla. Stat. (2016). Given failed to present any such evidence. Given argues that as he had not yet begun actively managing Univar territory because of the pending injunction proceedings, he has not breached the non-compete and no monetary damages were incurred by Allied as a result of his employment with Univar. He admitted that, if he were not enjoined, he would begin managing a sales territory for Univar. However, the only focus at the preliminary injunction stage is to maintain longstanding relationships and preserve the company's goodwill. See U.S. Floral Corp. v. Salazar, 475 So. 2d 1305 (Fla. 3d DCA 1985) (noting that entry of a temporary injunction is the favored remedy for violation of a non-compete agreement); Variable Annuity Life Ins. Co. v.

6

Hausinger, 927 So. 2d 243, 245 (Fla. 2d DCA 2006) ("[T]he harm presumed under the statute includes the potential damages to [the plaintiff's] longstanding relationships with its customers and the protection of confidential client information"). The breach of a non-compete agreement that threatens a former employer's goodwill and relationships with its customers, indicates that nothing short of an injunction would prevent this loss. See TransUnion Risk & Alternative Data Sols., Inc. v. Reilly, 181 So. 3d 548, 551 (Fla. 4th DCA 2015).

Allied presented unrebutted evidence that should the temporary injunction not be granted, Allied would suffer irreparable harm. Allied's president testified that Allied's business would be severely hurt if Given were to use Allied's customer information, relationships, and marketing strategy in his new employment with Univar. There is no adequate remedy at law for disclosure of this information. The employer seeking an injunction need not directly prove that the former employee's actions will cause irreparable harm if not enjoined; the presumption of harm here is unrebutted. See Hausinger, 927 So. 2d 243, 245 (Fla. 2d DCA 2006) (holding that the inability to demonstrate actual monetary damages does not preclude a finding of irreparable harm to support injunctive relief)); Am. II Elecs., Inc. v. Smith, 830 So. 2d 906, 908 (Fla. 2d DCA 2002) (recognizing that "a party seeking to enforce a restrictive covenant by injunction need not directly prove that the defendant's specific activities will cause irreparable injury if not enjoined"). "To require that a plaintiff prove irreparable injury as a prerequisite to

7

injunctive relief, as petitioner urges, would, in most instances, defeat the purpose of the plaintiff's action. Immediate injunctive relief is the essence of such suits and oftentimes the only effectual relief. It truly can be said in this type of litigation that relief delayed is relief denied." Capraro v. Lanier Bus. Prod., Inc., 466 So. 2d 212, 213 (Fla. 1985).

Accordingly, we reverse the order denying the motion for temporary injunction and remand with directions to grant the motion and enter the requested temporary injunction reinstating the status quo. Our decision shall take effect immediately notwithstanding the filing of any motion for rehearing.

Reversed and remanded.