# Third District Court of Appeal

## State of Florida

Opinion filed June 6, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-86
Lower Tribunal No. 17-29242
_____

**City of Miami,**
Appellant,

vs.

**City of Miami Firefighters' and Police Officers' Retirement Trust & Plan, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

Victoria Méndez, City Attorney, and John A. Greco, Deputy City Attorney, and Kerri L. McNulty and Kevin R. Jones, Assistant City Attorneys, for appellant.

Klausner, Kaufman, Jensen & Levinson, and Robert D. Klausner, Adam P. Levinson and Paul A. Daragjati (Plantation), for appellees.

Before ROTHENBERG, C.J., and EMAS and LINDSEY, JJ.

EMAS, J.

**INTRODUCTION**

The City of Miami ("the City") filed suit against the City of Miami Firefighters' & Police Officers' Retirement Trust & Plan ("the Trust") and the Board of Trustees of the City of Miami Firefighters' & Police Officers' Retirement Trust ("the Board"), seeking temporary and permanent injunctive relief.

In the instant appeal, the City seeks review of the trial court's order (1) denying the City's emergency motion for temporary injunctive relief; and (2) granting the Trust and the Board's motion for abatement and abating the proceedings below, pending exhaustion of the conflict resolution procedures in Chapter 164.

For the reasons that follow, we reverse the trial court's order denying the City's emergency motion for temporary injunctive relief, and affirm the trial court's order abating the proceedings.

**FACTS AND PROCEDURAL HISTORY**

On July 28, 2010, the City declared a "financial urgency," pursuant to section 447.4095, Florida Statutes (2010), and, on August 31, 2010, voted to unilaterally alter the terms of its collective bargaining agreement ("CBA") with Miami Lodge No. 20, Fraternal Order of Police ("the Union"). The City implemented this change to the CBA by amending its pension ordinance, resulting

in reduced pension benefits for retired police officers ("the 2010 pension ordinance").

The Union filed an unfair labor practice charge with the Public Employees Relations Commission ("PERC") on September 21, 2010, contending that the City improperly modified the CBA without completing the impasse resolution process[1] required by the financial urgency statute. See §447.403, Fla. Stat. (2010). The hearing officer found that the City had properly invoked the financial urgency statute and was not required to complete the impasse resolution procedures before implementing changes to the CBA. PERC adopted the hearing officer's recommendation in its final order dismissing the Union's charge.

The Union appealed to the First District Court of Appeal, which affirmed PERC's final order, finding PERC did not err in interpreting or applying section 447.4095. Headley v. City of Miami, 118 So. 3d 885 (Fla. 1st DCA 2013).

The Union sought review from the Florida Supreme Court, and on March 2, 2017, the Florida Supreme Court issued its opinion, agreeing with the Union that a public employer may not modify a CBA in the event of a financial urgency unless it shows "that the funds are not available from any other possible reasonable source." Headley v. City of Miami, 215 So. 3d 1, 8 (Fla. 2017). The Court also held that "section 447.4095 permits the unilateral implementation of changes to the

---

[1] See §447.4095, Fla. Stat. (2010).

3

CBA only after the parties have completed the impasse resolution proceedings and have failed to ratify the agreement." Id. at 9. The Court quashed the First District's decision and remanded "for proceedings consistent with this decision." Id. at 10. On remand, the First District issued an order remanding the case to PERC "for further proceedings consistent with the Florida Supreme Court's opinion."

On remand, PERC concluded that the City failed to comply with the impasse resolution procedures of section 447.403, and that it was not statutorily authorized to unilaterally modify the collective bargaining agreement. PERC further concluded that the City engaged in an unfair labor practice[2] when it adopted the 2010 pension ordinance, because the City unilaterally changed wages, pensions, health insurance and other monetary items for the police union employees prior to completing the impasse resolution procedures. The order remanded the cause to a hearing officer to recommend an appropriate remedy. On July 20, 2017, the

---

[2] Section 447.501, Florida Statutes (2017), entitled "Unfair labor practices" provides in pertinent part:

> (1) Public employers or their agents or representatives are prohibited from:
> (a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
> . . .
> (c) Refusing to bargain collectively, failing to bargain collectively in good faith, or refusing to sign a final agreement agreed upon with the certified bargaining agent for the public employees in the bargaining unit.

4

hearing officer recommended that the City be directed to rescind its modifications to the wages, health care, and pension benefits of employees represented by the Union and that PERC direct the parties to return to the status quo ante as of September 29, 2010, the day prior to the adoption of the 2010 pension ordinance.

On September 27, 2017, the Board sent a letter to the City Manager, inviting the City to engage in discussion with the Board on the issues arising out of the Florida Supreme Court's decision and PERC's recent orders ("the Board's September 27 letter").

On October 18, 2017, PERC adopted the hearing officer's recommendations and determined that "[t]he appropriate remedy in this case requires the City to rescind the changes in wages and benefits that were legislatively imposed on September 30, reinstate the status quo ante as of September 29, 2010, and make the employees whole." PERC directed the clerk to open a back-pay case and schedule a hearing before a hearing officer for that purpose. Importantly, the PERC order specifically provided:

> This is not an appealable final order because the amount of back pay remains for determination. When the amount of back pay is resolved, the Commission will issue a final order that will allow either party to appeal the merits of this order or the amount of back pay.

(Emphasis added.)

Following this October 18, 2017 nonfinal, nonappealable order from PERC, on November 2, 2017, the Board voted to "administer the System as if the

5

Ordinance had never been adopted in 2010 . . . correct all member records accordingly and add the liability to the City cost." It directed the Trust Administrator to "correct all members that were affected and provide benefits as if Ordinance 13202 had never been adopted." This "correction" of benefits did not calculate any back pay that was due, but restored the plan beneficiaries to the pension calculation that was utilized before the City's 2010 pension ordinance.

On December 22, 2017, the City filed suit against the Board and the Trust in circuit court, seeking to enjoin the Board's anticipated action in adjusting benefit payments and providing benefits under the pre-2010 pension ordinance. It also filed an emergency motion for temporary injunctive relief, asserting such adjusted payment of benefits would be in violation of the City's pension code, which had not been amended by the City, which no final court order had invalidated, and which the Board and the Trust had no authority to modify, rescind or ignore.

After an evidentiary hearing, the trial court entered an order denying the City's motion for temporary injunctive relief. The trial court also determined that, because the City failed to comply with the pre-suit conflict resolution procedures under Chapter 164, the circuit court proceedings must be abated pending compliance with those conflict resolution procedures. This appeal followed.[3]

**ANALYSIS AND DISCUSSION**

---

[3] Beginning on January 15, 2018, the Board began paying restored pension benefits calculated on the pre-2010 pension ordinance.

**Did the trial court err in denying the City's motion for a temporary injunction to prevent the Board from unilaterally adjusting payments and providing benefits as if the 2010 pension ordinance had never been adopted?**

We apply a hybrid standard of review to the appeal of an order granting or denying a temporary injunction: "To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." Gainesville Woman Care, LLC v. State, 210 So. 3d 1243, 1258 (Fla. 2017) (quoting Fla. High Sch. Athletic Ass'n v. Rosenberg, 117 So. 3d 825, 826 (Fla. 4th DCA 2013) (additional citations omitted).

The Board's position is that the Headley decision "invalidated" the 2010 pension ordinance, rendering it void ab initio, and thus, the Board was required to restore the plan beneficiaries to the pre-2010 pension ordinance.

Thus framed, the initial question is whether, at this procedural posture, the 2010 pension ordinance is still valid in light of Headley. We conclude that it is. First and foremost, nowhere in Headley did the Florida Supreme Court invalidate or declare void the City's 2010 pension ordinance. Nor did the Court direct the First District or PERC to do so. Although Headley quashed the First District's opinion upholding PERC's determination that the City acted properly, the Headley court did not quash the 2010 pension ordinance. The Headley Court simply rejected the First District's determination that the City was entitled to unilaterally

7

amend the pension ordinance without first completing the impasse resolution proceedings, and then showing that funds were not available from any other possible reasonable source. In other words, the Florida Supreme Court rejected PERC's and the First District's basis for determining that the City properly enacted the 2010 pension ordinance. The First District, on remand, simply remanded to PERC for proceedings consistent with the Supreme Court's opinion.

The Board further maintains it that had no choice but to administer the system and provide benefits as if the 2010 pension ordinance did not exist because PERC's subsequent order on remand from the First District Court of Appeal also rendered the 2010 pension ordinance void. Again, we disagree.

First, on remand, although PERC concluded that the 2010 pension ordinance was improvidently passed, PERC determined that the appropriate remedy is for the City to rescind the 2010 changes to the pension ordinance and to reinstate the pension ordinance in place before those unilateral changes were made:

> The appropriate remedy in this case **requires the City** to rescind the changes in wages and benefits that were legislatively imposed on September 30, reinstate the status quo ante as of September 29, 2010, and make the employees whole.

Although, ultimately, the City may be required to rescind, modify or amend its 2010 pension ordinance to comply with any final order issued by PERC, the obligation and authority to do so rests with the City and not the Board.

8

Furthermore, as PERC specifically provided in its order, its determination is neither final nor appealable, and a final order will be forthcoming (following the back pay determination) which will then allow the City to appeal both the back pay issue and the merits of PERC's decision. Accordingly, because the PERC order is not yet final or appealable, the 2010 pension ordinance is still in place and the Board should have continued to administer the Trust pursuant to that ordinance until PERC issues a final order. See § 185.06(4), Fla. Stat. (2017) (providing "nothing herein shall empower a board of trustees to amend the provisions of a retirement plan without the approval of the municipality).

The Board's erroneous conclusion that the 2010 pension ordinance is void ab initio, and its corresponding, unauthorized, directive that the Trust Administrator "provide benefits as if Ordinance 13202 had never been adopted," and "administer the System as if the Ordinance had never been adopted in 2010," usurped the City's authority and its police power. In addition, given that the PERC proceedings are not yet complete, and the order issued by PERC on remand is nonfinal and nonappealable, the Board's action impairs the City's appellate rights.

Based upon this threshold determination, we conclude that the trial court erred in denying the City's emergency motion for temporary injunction. Under Florida law, "[a] temporary injunction should only be granted where there is a showing of (1) the likelihood of irreparable harm and the unavailability of an

9

adequate remedy at law, (2) a substantial likelihood of success on the merits, (3) that the threatened injury to petitioner outweigh any possible harm to the respondent, and (4) that the granting of the preliminary injunction will not disserve the public interest." Miami-Dade Cty. v. Fernandez, 905 So. 2d 213, 215 (Fla. 3d DCA 2005). However, and importantly in this case, "this showing is relaxed when an injunction is sought by a governmental entity to enforce its police powers. In such circumstances the municipality need not come forth with proof to show irreparable harm or lack of an alternate remedy." Id. (citing Metro. Dade Cty. v. O'Brien, 660 So. 2d 364, 365 (Fla. 3d DCA 1995) for the proposition that "[w]here the government seeks an injunction in order to enforce its police power, any alternative legal remedy is ignored and irreparable harm is presumed).

A municipality's enforcement of its ordinance falls within that municipality's police power. See Manatee Cty. v. 1187 Upper James of Fla., LLC, 104 So. 3d 1118, 1121 (Fla. 2d DCA 2012) (holding county entitled to injunction where it seeks to enforce its duly enacted ordinance); Polk County v. Mitchell, 931 So. 2d 922 (Fla. 2d DCA 2006).

Given our conclusion that the 2010 pension ordinance was not invalidated in Headley, and that the PERC order on remand was not final or appealable, the City is correct that it need not establish irreparable harm and lack of an alternate remedy

10

in order to obtain temporary injunctive relief, as it is seeking such to protect its police power to enforce its own existing ordinances.[4]

### Did the trial court err in abating the proceedings until Chapter 164's conflict resolution procedures are exhausted?

The trial court determined that abatement was required because (1) the Board initiated formal conflict resolution procedures with its September 27 letter; and (2) because, where a governmental entity files suit against another governmental entity, Florida law requires abatement until the procedural options of the Florida Governmental Conflict Resolution Act have been exhausted. §164.1041, Fla. Stat. (2017). We agree with the trial court that section 164.1041 warrants abatement.

The purpose of Chapter 164 is to:

enhance intergovernmental coordination efforts by the creation of a governmental conflict resolution procedure that can provide an equitable, expeditious, effective, and inexpensive method for

---

[4] Although the Board argues that the City cannot demonstrate a likelihood of success on the merits, the Board's argument fails to recognize that the "merits" is not the ultimate validity of the 2010 pension ordinance. Rather, the "merits" in this case is whether the Board was without authority to unilaterally calculate and pay benefits based on the pre-2010 pension ordinance. As discussed earlier, the Board does not have such unilateral authority in the absence of a final order invalidating the 2010 pension ordinance. See §§ 40-195, 40-196, City of Miami Code of Ordinances (providing that the Board must act "[i]n accordance with ordinances and other applicable law, documents and other instruments governing the retirement system" and listing the duties of the Board, none of which includes deciding whether or not to follow existing ordinances which have not been invalidated or replaced).

resolution of conflicts between and among local and regional governmental entities.

§164.102, Fla. Stat. (2017). The Legislature has expressed its intent "that conflicts between governmental entities be resolved to the greatest extent possible without litigation." Id. It is undisputed that the parties in this case are all "governmental entities," as defined in chapter 164.[5]

Pursuant to section 164.1041(1):

If a governmental entity files suit against another governmental entity, court proceedings on the suit **shall be abated**, by order of the court, until the procedural options of this act have been exhausted.

(Emphasis added). That same subsection further provides:

The governing body of a governmental entity initiating conflict resolution procedures pursuant to this act shall, by motion, request the court to issue an order abating the case pursuant to this section.

Finally, section 164.1052(1) provides:

The governing body of a governmental entity shall initiate the conflict resolution procedures provided by this act through passage of a resolution by its members. The resolution shall state that it is the intention of the governing body to initiate the conflict resolution procedures provided by this act prior to initiating court proceedings or prosecuting action on a previously filed court proceeding to resolve the conflict. . . .

Chapter 164 also provides for a conflict assessment phase and joint public meetings (in the event of no resolution), followed by the governmental entities'

_____

[5] The Board is the governing body of the governmental entity (the Trust) in this case. See §164.1031(5).

12

right to pursue other legal rights. See §§ 164.1053, 164.1055, 164.1056, and 164.1057. It is undisputed that none of these conflict resolution procedures have been conducted between the City and the Board in this case.

The City contends that the trial court erred in abating the matter because chapter 164's dispute resolution procedures were not properly invoked by the Board. The City asserts that the Board's September 27 letter was not a resolution passed by the members of the Board's governing body as required under section 164.1052(1). Therefore, the City argues, the Board did not "initiate the conflict resolution procedures provided by this act," and may not move to abate the proceedings pursuant to section 164.1041(1).

We agree with the City that the Board's letter of September 27 does not qualify as a "resolution" as would be statutorily required to initiate dispute resolution procedures under section 164.1052(1). Instead, the Board's letter states merely that the Board is prepared to meet with the City in an open, public discussion to address the issues. Nowhere does the letter indicate, as required by section 164.1052(1), that the Board has adopted a "resolution" stating "that it is the intention of the governing body to initiate the conflict resolution procedures provided by this act." Indeed, the record reflects no such resolution having been passed by the Board.

However, we agree with the Board that despite any failure to pass a resolution, abatement was nevertheless required under section 164.1041(1), which provides: "If a governmental entity files suit against another governmental entity, **court proceedings on the suit shall be abated, by order of the court,** until the procedural options of this act have been exhausted." The only reasonable construction of this language requires the trial court to abate the proceedings until the parties exhaust the procedural options of Chapter 164, even if dispute resolution procedures were not initiated prior to filing suit.

The City appears to conflate the two provisions of sections 164.1041(1) (mandatory abatement) and 164.1052(1) (initiation of conflict resolution procedures). In essence, the City asserts that, unless the Board properly initiates conflict resolution procedures, it cannot move for abatement of the proceedings and the trial court cannot order abatement of the proceedings. We do not agree, and conclude that, where a governmental entity files suit against another governmental entity and the procedural options under chapter 164 have not yet been exhausted, the plain language of section 164.1041(1) requires the trial court to abate the action regardless of whether either party has initiated the conflict resolution procedures. Any other reading would produce absurd results, would permit parties to evade conflict resolution in favor of litigation, frustrating the entire legislative purpose and intent of chapter 164. The City would have us

14

interpret the law to mean that if a governmental entity sues another governmental entity without invoking the conflict resolution procedures, the defending entity cannot seek to abate the action and invoke those procedures post-filing unless its governing body first passes a resolution. But that is not what the statute plainly states: **"If a governmental entity files suit against another governmental entity, court proceedings on the suit shall be abated, by order of the court, until the procedural options of this act have been exhausted."** §164.1041(1) (emphasis added).

Although the City may be correct that the conflict resolution procedures cannot <u>begin</u> until either the Board or the City passes a resolution, this does not mean that the court proceeding should continue until that happens. The court proceeding **"shall be abated . . . until the procedural options . . . have been exhausted."** <u>Id.</u> (emphasis added).

Accordingly, because the City filed suit without the parties having first exhausted Chapter 164's conflict resolution procedures, the trial court properly abated the action.

We affirm the trial court's order abating the action, and reverse the trial court's order denying the City's motion for temporary injunction. We remand for entry of a temporary injunction in favor of the City and for further proceedings consistent with this opinion.