# Third District Court of Appeal
## State of Florida

Opinion filed September 1, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-619
Lower Tribunal No. 20-11245

_____

**GFA International, Inc.,**
Appellant,

vs.

**Eric Trillas, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Veronica Diaz, Judge.

Rosenthal Law Group, Alex P. Rosenthal and Amanda Jassem Jones (Weston), for appellant.

Fors | Attorneys at Law, Jorge L. Fors, Jr. and Daniel C. Fors, for appellees.

Before LOGUE, HENDON and GORDO, JJ.

GORDO, J.

GFA International, Inc. appeals the trial court's order denying its

motion for temporary injunction to enjoin Eric Trillas and Trillas Consulting

Engineers ("TCE") from violating an employment agreement. We have jurisdiction. See Fla. R. App. P. 9.130(a)(3)(B). Because we find the trial court abused its discretion in determining there was insufficient evidence that Trillas violated the restrictive covenant, we reverse the trial court's order and remand for entry of a temporary injunction.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2015, GFA hired Eric Trillas to serve as its inspections department manager. Trillas entered into a confidentiality, non-solicitation and non-competition agreement as a condition of employment with GFA. In 2016, Trillas was promoted to branch manager at GFA's Miami location and was charged with managing the day-to-day operations of the branch including overseeing marketing, sales, finances and helping bring in new work. Trillas became part of the operations team of the company, which was responsible for running the company, and was tasked with overseeing the company's facility support services ("FSS") department, which included forensic inspections and post storm damage evaluations. Trillas helped GFA to grow the FSS department by putting together a team of GFA employees to provide post storm engineering consulting, assisting with developing marketing materials, advertising GFA's post hurricane emergency services,

2

purchasing a drone to use for forensic evaluations and bringing in clients for post storm-related services.

In 2015, about six months after commencing his employment with GFA, Trillas formed TCE to perform structural, mechanical, electrical and plumbing design work. Trillas was free to perform design work through TCE because GFA was not engaged in the design business. However, in 2017, Trillas dissolved TCE and formed a new business under the same name, which he registered as an engineering business.

During the term of his employment with GFA, Trillas began to divert business from GFA and perform post storm damage evaluations through TCE, even though GFA was performing those very services and Trillas was specifically responsible for developing that department at GFA. In May 2020, Trillas left GFA's employment and continued performing post storm damage evaluation and forensic consulting services. Trillas also continued working with GFA clients, including Keys Claims, which he had personally brought in as client for GFA.

GFA sued Trillas and TCE for injunctive relief, breach of contract, breach of duty of loyalty, fraud, violation of FDUTPA and tortious interference with a business relationship and moved for a temporary injunction to enjoin Trillas from engaging in any business activity which was directly or indirectly

3

in competition with GFA.  GFA alleged that, unbeknownst to GFA and while still employed by GFA: (1) Trillas went into direct competition with them to perform post storm damage evaluations through TCE even though GFA was performing those services; (2) Trillas engaged in acts to promote his own self-interest in direct competition with GFA while serving as a high management level employee privy to confidential information; and (3) Trillas used his position with Keys Claims, as well as other insurance adjusters and clients, to divert and steal GFA's existing and prospective customers for his own company.

Following a five-day evidentiary hearing, the trial court denied the motion for temporary injunction finding there was insufficient evidence to support GFA's claims that Trillas violated the restrictive covenant.  The court found that because the action permitted for recovery of monetary damages, there was an adequate remedy at law and no irreparable injury.  It further found the relief sought by GFA did not serve the public interest, specifying that preventing an individual from exercising their profession during the COVID-19 pandemic would not serve the public interest.

On appeal, GFA argues that it established entitlement to a temporary injunction because there was sufficient unrebutted evidence to establish violations of the restrictive covenant.  Such violations create a statutory

presumption of irreparable injury and Trillas did not present evidence to rebut the presumption.

## LEGAL ANALYSIS

"The trial court is afforded broad discretion when granting, modifying or denying an injunction." Allied Universal Corp. v. Given, 223 So. 3d 1040, 1042 (Fla. 3d DCA 2017). "Although a trial court has wide discretion in reviewing a temporary injunction, the trial court's factual determinations must be supported by competent, substantial evidence." Planned Parenthood of Greater Orlando, Inc. v. MMB Props., 211 So. 3d 918, 926 (Fla. 2017). "When evaluating whether a trial court's order granting an injunction is supported by competent, substantial evidence, we look at legal sufficiency as opposed to evidentiary weight." Lopez v. Regalado, 257 So. 3d 550, 554 (Fla. 3d DCA 2018). "To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." Quirch Foods LLC v. Broce, 314 So. 3d 327, 337 (Fla. 3d DCA 2020) (quoting Fla. High Sch. Athletic Ass'n v. Rosenberg, 117 So. 3d 825, 826 (Fla. 4th DCA 2013)).

### I.  Enforceable Restrictive Covenants

"Covenants not to compete are governed by section 542.335, Florida Statutes." Walsh v. Paw Trucking, Inc., 942 So. 2d 446, 447–48 (Fla. 2d DCA 2006). Section 542.335(1) permits "enforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business." § 542.335(1), Fla. Stat. (2019). "In an action seeking enforcement of a restrictive covenant, '[t]he person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.'" Surgery Ctr. Holdings, Inc. v. Guirguis, 318 So. 3d 1274, 1278 (Fla. 2d DCA 2021) (quoting § 542.335(1)(b)). "A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." § 542.335(1)(c). Section 542.335(1)(b) provides a non-exhaustive list of statutorily protected legitimate business interests, including "[t]rade secrets," "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets," "[s]ubstantial relationships with specific prospective or existing . . . clients" and a "specific geographic location." See Allied Universal, 223 So. 3d at

1043. "A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." § 542.335(1)(h).

The restrictive covenants at issue include the covenant not to compete and the covenant not to solicit GFA's customer or clients. The non-compete agreement, which Trillas voluntarily entered into with GFA, provided that:

> [D]uring the term of Employee's employment with the Company, and during the two (2) year period commencing on the date of termination of Employee's employment with the Company (the "Non-Competition Period"), Employee will not, directly or indirectly . . . (a) engage in any business activity which is directly or indirectly in competition with the Company Business; . . . (d) accept any business and/or employment from any existing and/or prospective customers that were such with respect to Company at any time prior to or during the Non-Competition Period . . . . For the purposes of this Section 3.4, the terms "Company Business" or "Company Businesses" shall mean the actual or intended business of the Company anytime from the date of this Agreement to the date the Employee leaves the employment of the Company.

The non-solicitation agreement provided that:

> [D]uring the term of Employee's employment with the Company, and during the two (2) year period commencing on the date of termination of Employee's employment with the Company, Employee will not, directly or indirectly, solicit the trade of, or trade with, or do business with, or attempt to solicit the trade of, or trade with, or do business with, any of the Company's customers/clients or

7

> prospective customers/clients except for the Company's benefit.

The enforceability of the restrictive covenants is uncontested in this action. Trillas did not challenge the enforceability of the restrictive covenants nor did the court make any finding that the covenants were unenforceable. In its pleadings and at the evidentiary hearing, GFA contended and established that the restraints reasonably serve a legitimate business interest. As such, we turn our analysis to the alleged breach of the covenants.

## II. *Violation of the Enforceable Restrictive Covenants Creates Presumption of Irreparable Injury*

"Section 542.335(1)(j) authorizes trial courts to enter temporary injunctions as one method of enforcing a covenant not to compete." Walsh, 942 So. 2d at 448. "Generally, when a trial court enters an order for a temporary injunction, it must make four specific, factual findings in support of its order." Id. The trial court must find that the party seeking an injunction satisfied each of the following elements with competent, substantial evidence: "(1) a likelihood of irreparable harm and the unavailability of an adequate remedy at law; (2) a substantial likelihood of success on the merits; (3) that the threatened injury . . . outweighs any possible harm . . . ; and (4) that the granting of a temporary injunction will not disserve the public

8

interest." Allied Universal, 223 So. 3d at 1042; see Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 436 (Fla. 3d DCA 2016). "In the case of a temporary injunction to enforce a covenant not to compete, the trial court's findings should specifically relate to the alleged breach of the covenant." Walsh, 942 So. 2d at 448.

"The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Surgery Ctr. Holdings, 318 So. 3d at 1278 (quoting § 542.335(1)(j)). "Thus, 'a party seeking to enforce a restrictive covenant by injunction need not directly prove that the defendant's specific activities will cause irreparable injury if not enjoined.'" Id. (quoting Am. II Elecs., Inc. v. Smith, 830 So. 2d 906, 908 (Fla. 2d DCA 2002)). "A party only needs to prove a violation of an enforceable restrictive covenant to be entitled to the presumption." Id.; see § 542.335(1)(j) ("A court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunctions. The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.").

At the evidentiary hearing on the motion for temporary injunction, GFA presented unrebutted evidence that Trillas violated the plain terms of the

9

restrictive covenants by engaging in a business activity in direct competition with GFA and soliciting and diverting customers from GFA. GFA presented evidence that the company provided storm damage evaluations and forensic engineering during the period of Trillas's employment between February 2015 and May 2020. GFA's vice president, Paul Danforth, a professional engineer, testified that the company had provided these services since he began his employment in 2004 and that the company performed post storm damage evaluations after hurricanes Wilma and Katrina. Danforth testified there was a period where no significant hurricanes affected Florida until Hurricane Irma in 2017 and that GFA was retained to perform post storm assessment work in its wake. Trillas, while arguing that the company did not perform forensic engineering until he was an employee, conceded he was in charge of spearheading the growth of this department. Trillas attested that GFA advertised post storm damage evaluation services in 2017 and admitted performing storm damage evaluation and forensic engineering work on behalf of GFA in 2018. It was, therefore, established by uncontroverted evidence that GFA's "Company Business" included performing forensic engineering services and post storm damage evaluations between the date Trillas entered into the employment agreement and the date Trillas left GFA's employment. GFA also presented unrebutted

10

testimony that Keys Claims was a client of GFA during Trillas's employment. Trillas himself admitted to bringing in Keys Claims as a client of GFA. It was undisputed that Trillas continued performing forensic engineering services and post storm damage evaluations after he left GFA's employment, including doing business with GFA's existing client, Keys Claims.

The record reflects that the competent, substantial evidence adduced at the hearing was sufficient to prove a violation of the enforceable restrictive covenants under section 542.335. See Am. II Elecs., 830 So. 2d at 908. Therefore, the "evidence was sufficient to create a rebuttable presumption of irreparable injury for purposes of obtaining an injunction under section 542.335(j)." Id.

Trillas did not present any evidence at the evidentiary hearing to rebut the presumption of irreparable injury. Rather, Trillas argued that because he was responsible for developing the FSS department as a stronger line of business for GFA and brought in Keys Claims as its client, there should be some exception permitting him to perform forensic engineering for Keys Claims and other adjusters through TCE after his termination from GFA. "When the terms of a noncompete agreement are clear and unambiguous, the contracting parties are bound by its terms." Surgery Ctr. Holdings, 318 So. 3d at 1280. Based on our review of the plain language of the agreement,

the restrictive covenants clearly prohibit Trillas from engaging in business activity which is directly or indirectly in competition with GFA's "Company Business" and preclude Trillas from directly or indirectly soliciting or doing business with GFA's clients for a period of two years following the termination of his employment. The restrictive covenants do not contain any carve-out exceptions permitting Trillas to perform forensic engineering through his own company or allow Trillas to do business with GFA's existing client, whether or not he established the connection during his employment with GFA. Trillas's argument that the forensic engineering services and post storm damage evaluation services were not "Company Business" belie the record as it was unrefuted that GFA performed forensic engineering services under Trillas's direct management.

At the evidentiary hearing, GFA established the violations of the restrictive covenants by competent, substantial evidence, raising a statutory presumption of irreparable injury. That presumption was not rebutted by any evidence in the record. Accordingly, we conclude the trial court abused its discretion in finding, contrary to the unrebutted evidence, that there was insufficient evidence of a violation of an enforceable restrictive covenant.

### III.    *Unavailability of an Adequate Remedy at Law*

"[Trillas's] argument that there is no irreparable harm because [GFA]'s

12

injuries, if any, are subject to a monetary judgment, is . . . without merit and has been rejected by other courts, where, as here, there is a statutory presumption of irreparable harm." Quirch Foods, 314 So. 3d at 343 (quoting Variable Annuity Life Ins. Co. v. Hausinger, 927 So. 2d 243, 245 (Fla. 2d DCA 2006)). Trillas's continued breach of the restrictive covenants in the employment agreement would continue to damage GFA's goodwill and relationships with its customers. See id. 342–43. "Only an injunction would prevent this damage." Id. at 343. We accordingly determine the trial court erred in finding the availability of monetary damages as a remedy precluded the issuance of the temporary injunction.

## IV. Public Policy Interest

"Public policy in Florida favors enforcement of reasonable covenants not to compete." Id. (quoting Winmark Corp. v. Brenoby Sports, Inc., 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014). "[T]he public has a cognizable interest in the protection and enforcement of contractual rights." Id. (quoting Telemundo Media, 194 So. 3d at 436). "Enforcing these restrictive covenants serves the public interest because it demonstrates that courts will uphold agreements, and employers can rely on non-compete agreements to protect their legitimate business interests." Id. "Companies who provide confidential information to its employees need to know that it will be

protected if an employee resigns or is terminated because the non-compete agreement will be enforced." Id. "[A] trial court must specifically articulate an overriding public policy reason if it refuses to enforce a non-compete covenant based on public policy grounds." DePuy Orthopaedics, Inc. v. Waxman, 95 So. 3d 928, 940 (Fla. 1st DCA 2012). Here, the court's finding that precluding Trillas from working in his field amid a pandemic would not serve the public interest is in conflict with section 542.335(1)(g)1., which states: "In determining the enforceability of a restrictive covenant, a court . . . [s]hall not consider any individualized economic or other hardship that might be caused to the person against whom enforcement is sought." See id. As such, we find the court erred in denying the injunction based on this individualized hardship as a matter of public policy.

**CONCLUSION**

We conclude the trial court abused its discretion by finding that the evidence in the record was insufficient to establish a violation of a restrictive covenant. The unrebutted evidence established a violation of the plain terms of the restrictive covenants in Trillas's employment agreement with GFA. Accordingly, we reverse the denial of the temporary injunction and remand.

Reversed and remanded.

14