# Third District Court of Appeal
## State of Florida

Opinion filed November 3, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1447
Lower Tribunal No. 19-32724
_____

**AmeriGas Propane, Inc.,**
Appellant,

vs.

**Nelson Sanchez, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Roberts, Reynolds, Bedard & Tuzzio, PLLC, and Benjamin L. Bedard and Stephanie W. Kaufer (West Palm Beach), for appellant.

Rodriguez, Tramont, & Núñez, P.A., and Paul M. Núñez and Andrew V. Tramont, for appellees.

Before HENDON, GORDO and BOKOR, JJ.

BOKOR, J.

AmeriGas Propane, Inc. ("AmeriGas") appeals the trial court's denial, after an evidentiary hearing, of its motion for temporary injunctive relief and enforcement of a non-compete and non-solicitation agreement against a former employee, Nelson Sanchez ("Sanchez"), and his new employer, Blossman Gas of Louisiana, Inc. ("Blossman Gas"). We have jurisdiction.[1] After a review of the record considered by the trial court, and the pertinent legal standard, we find that AmeriGas met its burden and demonstrated entitlement to a temporary injunction.

## I.    BACKGROUND

AmeriGas provides propane products and related services to its residential and commercial customers, including restaurants and grocery stores. In February 2012, AmeriGas hired Sanchez as an account manager and sales representative for its Medley, Florida office. Sanchez was tasked with maintaining accounts and acquiring new customers. In that capacity, Sanchez had access to AmeriGas's proprietary information including pricing data, customer lists, policies, and procedures.

On March 26, 2012, less than two months after getting the job, and as a condition of continued employment, Sanchez executed a confidentiality and

---

[1] We have jurisdiction over a non-final order denying injunctive relief pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B).

post-employment agreement which, in pertinent part, included non-disclosure, non-competition, and non-solicitation restrictive covenants:

> I will protect the Confidential Information of AmeriGas and its predecessors and affiliates from disclosure and will not, during or after my term of employment, divulge such Confidential Information or use it for the benefit of any person or entity not associated with AmeriGas.
>
> ***
>
> For a period of two years after the termination of my employment with AmeriGas for any reason:
>
> a. I will not directly or indirectly solicit the business of any AmeriGas Customer.  The term "AmeriGas Customer" is defined as any customer which is located within a fifty aerial mile radius of any AmeriGas District Office where I worked during the two-year period prior to the termination or my employment, and which has purchased products or services from AmeriGas during that two-year period;
>
> b. I will not directly or indirectly sell or provide propane or any other goods or services sold or provided by AmeriGas as of the date of the termination of my employment to any AmeriGas Customer who is located within a fifty aerial mile radius of any AmeriGas District Office where I worked during the two-year period prior to the termination of my employment.

On August 14, 2019, Sanchez resigned from AmeriGas after approximately seven years.  Thereafter, Sanchez accepted similar employment as a sales representative from Blossman Gas, a competitor of AmeriGas.  Blossman Gas is also in the propane industry and services

3

customers in Miami. Upon Sanchez's departure, AmeriGas lost eighteen customers to Blossman Gas which Sanchez previously managed.

On December 31, 2019, AmeriGas filed suit asserting breach of contract claims against Sanchez and tortious interference claims against Sanchez and Blossman Gas. On January 8, 2020, AmeriGas filed a motion for temporary injunctive relief seeking to enjoin Sanchez from: (i) directly or indirectly soliciting its customers within fifty miles, (ii) directly or indirectly selling or providing propane products and services to its customers within fifty miles, (iii) disclosing confidential information, and (iv) otherwise violating the agreement. AmeriGas also sought to enjoin Blossman Gas from tortiously interfering with its agreement and assisting Sanchez in violating the restrictive covenants.

During his deposition, Sanchez admitted to enrolling his prior customers, Kazumi and Costa Med, on behalf of Blossman Gas. Sanchez also approached the 8th Street Sarussi's owner with an offer from Blossman Gas. Notably, Sanchez often told his former customers to contact him for service at Blossman Gas. Furthermore, Blossman Gas assigned the following former AmeriGas customers to Sanchez: Kazumi, Costa Med, the 8th Street Sarussi, Lunch Break Café, El Gallego, El Palmar, and Sweet Dogs.

4

On July 27, 2020, the trial court held an evidentiary hearing. AmeriGas had two of its employees testify as to its business model as a relationship company. In pertinent part, the employees opined that Sanchez induced AmeriGas's customers to transfer their service based on his prior relationship with them.

On August 18, 2020, the trial court held a final evidentiary hearing. During the hearing, Blossman Gas had its employee testify as to his enrollment of former AmeriGas customers. He maintained that the customers decided to transfer due to superior service and/or cost savings. He also claimed that Sanchez's role was limited. For instance, he asserted that Sanchez merely provided translation during the transaction that led to the enrollment of Mi Habana Café. However, conflicting evidence was presented such as the testimony of the 8th Street Sarussi's owner who stated that she was happy with her propane service until Sanchez approached her with a better offer.

On September 8, 2020, the trial court entered its order denying AmeriGas's motion for temporary injunctive relief, finding that AmeriGas failed to establish its likelihood of success on the merits. Specifically, the trial court noted that AmeriGas failed to prove that Sanchez directly solicited its customers in contravention of the agreement. This appeal followed.

## II.    STANDARD OF REVIEW

5

"This Court applies a hybrid standard of review to the appeal of an order granting or denying a temporary injunction: To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." St. Brendan High Sch., Inc. v. Neff, 275 So. 3d 220, 222 (Fla. 3d DCA 2019) (quoting City of Miami v. City of Miami Firefighters' & Police Officers' Ret. Trust & Plan, 249 So. 3d 709, 713 (Fla. 3d DCA 2018)) (internal quotations omitted).

## III. DISCUSSION

While there was sufficient evidence and testimony from which the trial court could conclude that Sanchez did not actively solicit every customer he was accused of soliciting, the undisputed record evidence establishes that Sanchez solicited at least some of AmeriGas's customers and, in doing so, violated the restrictive covenants. Additionally, the undisputed record evidence establishes that Blossman Gas took advantage of Sanchez's business relations formed at AmeriGas to solicit former customers.

To obtain a temporary injunction, the movant must plead and prove a legitimate business interest in accordance with section 542.335(1)(b), Florida Statutes (2019). Here, AmeriGas established its legitimate business interest based on valuable confidential business information and

6

"[s]ubstantial relationships with specific prospective or existing customers, patients, or clients." Id. AmeriGas maintained substantial relationships with Mi Habana Café, Kazumi, Costa Med, and the 8th Street Sarussi prior to their transfer.

Further, the movant must establish: "(1) a substantial likelihood of success on the merits, (2) a lack of an adequate remedy at law, (3) the likelihood of irreparable harm absent the entry of an injunction, and (4) that injunctive relief will serve the public interest." Quirch Foods LLC v. Broce, 314 So. 3d 327, 343 (Fla. 3d DCA 2020) (citations and internal quotations omitted). The movant carries the burden of proof and must provide competent substantial evidence satisfying each element. Sammie Invs., LLC v. Strategica Cap. Assocs., Inc., 247 So. 3d 596, 600 (Fla. 3d DCA 2018).

In considering the first factor, the trial court found that AmeriGas failed to establish a substantial likelihood of success on the merits. Here, the restrictive covenants prohibited Sanchez from directly or indirectly soliciting the business of any of its customers and from directly or indirectly selling or providing propane and related services sold by AmeriGas. Sanchez supplied propane and related services to customers which he previously managed while employed with AmeriGas. Such evidence of solicitation of

7

his former customers established a substantial likelihood that Sanchez violated the non-compete and non-solicitation clauses.

Moreover, Sanchez admitted that he visited his former customers and told them to call him if they were having any issues with their current supplier. This is the definition of solicitation of former customers. It is also undisputed that Sanchez provided translation during the transaction that led to Mi Habana Café's enrollment with Blossman Gas. This violates the restrictive covenants which prohibit both direct and indirect solicitation. Additionally, Sanchez approached and enrolled AmeriGas customers, Kazumi and Costa Med, and approached the owner of the 8th Street Sarussi with an offer. It doesn't matter for purposes of the temporary injunction, that the customers attributed either substantial cost savings or unsatisfactory customer service as reasons for switching to Blossman Gas; the unrebutted evidence shows that Sanchez either directly or indirectly solicited them in violation of the restrictive covenants. Finally, Blossman Gas not only took advantage of the customers solicited (and enrolled) by Sanchez, but Blossman Gas also brought Sanchez along on solicitation calls with other AmeriGas customers.[2]

_____

[2] The trial court concluded that Blossman Gas sending Sanchez to assist on a solicitation call to a Spanish-speaking customer at Mi Habana Café (an AmeriGas customer serviced by Sanchez at AmeriGas) didn't constitute solicitation because Sanchez was only engaged in translation of the sales pitch presented by the other Blossman Gas employee. This misses the

Turning to the second factor, money damages would not cure AmeriGas's injuries. Rather, only an injunction would prevent losses incurred with the dissemination of confidential information and lost customer relationships. See Quirch Foods LLC, 314 So. 3d at 343 (finding an injunction necessary to prevent damages to the plaintiff's goodwill and client relations).

Next, the third factor requires that the movant establish the likelihood of irreparable harm absent an injunction. Section 542.335(1)(j) mandates a presumption of irreparable harm once a restrictive covenant is violated. The burden of proof then shifts to the defendants to rebut the presumption. Allied Universal Corp. v. Given, 223 So. 3d 1040, 1044 (Fla. 3d DCA 2017). In this case, AmeriGas established a violation of the restrictive covenant. Further, Blossman Gas is a competitor of AmeriGas, and it supplies propane and related services within the same geographical area. Sanchez works for Blossman Gas as a sales representative enrolling customers and maintaining relationships as he did for AmeriGas. In rebuttal, Sanchez and

mark. The Blossman Gas employee, Becker, admitted that the solicitation was the result of "teamwork." Becker and Sanchez also admitted that many other Blossman Gas employees speak Spanish. Sanchez's signature was on the contract between Blossman Gas and the café. Accordingly, even if we were to discount the admission that Blossman Gas signed this account based on Sanchez's "teamwork," we cannot agree with the conclusion that translation and being the face of the new company to the old company's customer didn't constitute improper solicitation.

Blossman Gas take no issue with the factual predicate but argue that Sanchez's contact with the former customers did not violate the restrictive covenants. Such conclusory statements or arguments fail to create an issue of fact sufficient to rebut the presumption of irreparable harm arising from the violation.

Finally, the fourth factor requires that movant establish that the entry of an injunction serves the public interest. As we have explained, "there are contractual rights at issue and the public has a cognizable interest in the protection and enforcement of contractual rights." Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 436 (Fla. 3d DCA 2016). Furthermore, "[e]nforcing these restrictive covenants serves the public interest because it demonstrates that courts will uphold agreements, and employers can rely on non-compete agreements to protect their legitimate business interests." Quirch Foods LLC, 314 So. 3d at 343.

## IV.  CONCLUSION

We conclude that AmeriGas established the factors necessary to obtain a temporary injunction against both Sanchez and Blossman Gas. Therefore, we reverse the trial court's order and remand for entry of an order granting AmeriGas's motion for a temporary injunction. We note that AmeriGas is entitled to the two-year duration of its restrictive covenants. See Quirch

Foods LLC, 314 So. 3d at 334 ("Upon entry of the injunction, the trial court shall provide [AmeriGas] with the benefit of its full non-compete period."); Kverne v. Rollins Protective Servs. Co., 515 So. 2d 1320, 1322 (Fla. 3d DCA 1987).

Reversed and remanded with instructions.